**GARNER et al. v. JESSE C. STEWART CO.**
No. 5651.

Circuit Court of Appeals, Fifth Circuit.
March 18, 1930.

Rehearing Denied April 8, 1930.

H. H. Cooper and A. A. Lumpkin, both of Amarillo, Tex. (Cooper & Lumpkin, H. H. Cooper and A. A. Lumpkin, all of Amarillo, Tex., on the brief), for appellants.

Ben H. Stone, of Amarillo, Tex. (Stone & Guleke and Ben H. Stone, all of Amarillo, Tex., on the brief), for appellee.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Appellants (defendants below) entered into an agreement with the appellee for the sale of three hundred tons of cotton-seed meal at the price of $39 per ton, to be delivered, 100 tons during each of the months of October, November, and December, 1927. This contract was "subject to the rules of the Texas Cotton Seed Crushers' Association." Defendants failed, notwithstanding timely demands, to make any shipments, and after the expiration of each month, plaintiff went into the open market and purchased the meal at prevailing prices. For that not delivered in October, it paid $46.75; for November, $49, and for December, $51.50 per ton. This suit was then instituted to recover as damages the additional outlay of $3,025 necessary to fill the order.

There was no serious dispute as to the facts below and, after motions by both sides for directed verdicts, the court below granted that of the plaintiff for the full amount claimed.

Several assignments of error have been made, but we deem it necessary to consider only those dealing with the rules of the Texas Cotton Seed Crushers' Association, with respect to how the meal should be purchased and the damages determined after the contract had been breached. We quote pertinent portions of the rules as follows:

"Rule 210. Options to party not in default on Breach of Contract. * * * "

"Whenever under these rules a buyer elects to treat a contract as breached by the seller, he must either cancel the contract or buy the product for account of whom it may concern, and can in either case hold the seller for all damages resulting from his default."

"Rule 212. Purchases or sales for Account of Whom it May Concern. In those cases where the buyer or seller elects to buy or sell a product covered by a contract for account of whom it may concern, he must when his right so to do has accrued, all rights of the opposite party having been forfeited, give immediate notice of his intention, by telegram, to opposite party. Such repurchase or resale must then be made through a recognized broker, a member of

the Association in good standing, in not less than 24 hours and not more than 72 hours, after such notice, and shall be for a period of shipping conforming as nearly as possible to the original contract. As soon as such broker has received his order to buy or sell he must immediately notify the interest(ed) party by telegraph. The broker will note on his confirmation contract the fact that the sale or purchase was made for account of whom it may concern, and will note thereon the name of the interested party in addition to the names of the buyer and seller in the transaction which he is confirming. He will send a copy of such confirmation contract to each of the three parties named therein."

"Rule 213. Methods of Fixing Damages Exclusive. The methods of fixing damages for breach of contract outlined in the foregoing Rules are exclusive, and failure to follow the procedure there required, will defeat a claim for breach of contract."

Plaintiff made no effort to procure the services of a broker of the association, but proceeded just as if the contract had made no reference to these rules. We can see no reason why the parties were not at liberty to agree that they should be governed by the rules of this association in so far as they were applicable. Of course there were many provisions that were not appropriate, but the ones with reference to determining the damage when the seller had failed to deliver or the buyer had declined to receive the goods, we think could and should have been applied in this instance. It is contended that because neither were members of the association, they had no right to demand the services of its brokers. However, it does not follow that the plaintiff could not have employed one of them had it seen fit to do so. Upon the failure or refusal of those within the association, there was nothing to prevent it from engaging one outside. The rule 213 quoted above makes the manner of determining the damages provided by rule 212 "exclusive and failure to follow the procedure there required, will defeat a claim for breach of contract." Unless we write out of the agreement these provisions which the parties were at liberty to include, they must be enforced. It will not do to brush them aside because of inconvenience or other considerations. We assume that the association, by incorporating them in its rules, as well as the parties here in making them a part of their contract, had in mind a method which would be fair to both sides and calculated to have their

liability determined by a disinterested and impartial agency, which would preclude controversy as to whether the purchase or sale had been advantageous to the party to be charged. Courts will presume that business men, in using such terms, have sufficient reasons for doing so. See Hill County Cotton Oil Co. v. Jonas (C. C. A.) 29 F.(2d) 327; People's Ice & Mfg. Co. v. Int. Cotton Oil R. Co. (Tex. Civ. App.) 182 S. W. 1163; Planters' Cotton Oil Co. v. Godwin-Humphreys Co. (Tex. Civ. App.) 221 S. W. 642; Walker Grain Co. v. Blair Elevator Co. (C. C. A.) 254 F. 422.

For the reasons assigned, the judgment appealed from is reversed.