## HOCKADAY v. RED LINE, Inc.

### No. 9846.

United States Court of Appeals
District of Columbia Circuit.
Argued Feb. 23, 1949.
Decided April 25, 1949.

Mr. Louis Ginberg, of Washington, D. C., with whom Mr. John J. O'Brien, of Washington, D. C., was on the brief, for appellant.

Mr. Wilbert McInerney, of Washington, D. C., for appellee.

Before CLARK and WILBUR K. MILLER, Circuit Judges, and GEORGE C. SWEENEY, District Judge, sitting by designation.

SWEENEY, District Judge.

This is an appeal from a judgment after a jury verdict in favor of the appellee in the United States District Court for the District of Columbia. A motion for a new trial was seasonably filed in the lower court, and denied. The precise question before us is whether the conduct of the appellee's counsel, both in cross-examination and in argument, was calculated to prejudice the jury against the appellant to the extent that would warrant a new trial.

The appellant, hereinafter referred to as the plaintiff, filed an action in the lower court against the appellee, hereinafter referred to as the defendant, to recover damages for certain injuries sustained when the defendant's truck was in collision with the plaintiff on August 10, 1945.

On that date the plaintiff was injured on the Lee Highway near Falls Church, Virginia. He was a prisoner of the State of Virginia and in the custody of a road foreman engaged in repairing the highway. It appears from cross-examination of the plaintiff that he had been arrested on May 16, 1943, and charged with assault; that he was released on a $1,000 bond; that thereafter he was tried and convicted, and that his sentence was suspended under

a provision that he go into the military service; and that thereafter the suspended sentence was revoked and the plaintiff was sentenced to jail because he did not enter the military service. The defendant was thus permitted not only to question the plaintiff as to his conviction for assault, so as to affect his credibility, but was also permitted to question him as to all that has been set forth above, and in the course of his argument defendant's counsel made reference to these same matters. The chronology of this case was brought into play by the defendant's statement to the jury in his argument that "This case had its inception in May of 1943, not as of to-day." Since the incident which caused the plaintiff's injuries did not occur until August 10, 1945, it is difficult to follow the quoted statement above, except as we accept the defendant's version that the arrest of the plaintiff in 1943, his conviction, his probation, and the subsequent revocation of probation were so closely tied in to the incident of his injury as to make them inseparable. We cannot accept this view of the case.

■ Up to the point of showing the plaintiff's conviction on a charge of assault the defendant was well within his rights and, in the absence of objection by the plaintiff, it was proper for the trial judge to allow the defendant to ask about the arrest, the date of arrest, and being placed on bond. While "It is improper, for impeachment purposes, to show accusation, arrest, or indictment * * *", Sanford v. United States, 69 App.D.C. 44, 98 F.2d 325, 327, nevertheless where it is apparent that the next step in the process—conviction—is to be proved, it is not reversible error to permit such questioning where objection is waived by silence. But if the plaintiff in the eyes of the jury was to be impeached by the conviction for assault, then when the conviction was established the impeachment was complete and the type and length of sentence was immaterial. See Lee Kwong Nom et al. v. United States, 2 Cir., 20 F.2d 470, 472. The subsequent cross-examination as to the condition under which the plaintiff's suspended sentence was revoked, namely, upon his failure to enter

the military service, and the reference by defendant's counsel in his argument to the fact that the man had not been in the military service, were not properly a part of the impeachment process.

We do not base our decision on a view that the facts establish absolute liability in favor of the plaintiff but we view it in the broad light of the calculated effect of the statement on a jury at the time and place of its utterance. We are of the opinion that the cross-examination was prejudicial to the plaintiff.

■ The following is an excerpt from the argument of defendant's counsel:

"This case had its inception in May of 1943, not as of today. There are courts all over the United States; the courts are the same, you either have justice or you don't have justice, but you have in those courts the dignity which requires that their dictates be complied with, and in this case in May, 1943, the plaintiff in this case was told: 'If you go in the armed services of your country you will not have to serve this sentence.' Did he? He was physically able because his testimony is, 'I was in perfect condition,' but when he was brought back and required to serve his sentence when he refused to comply with the dictates of that court, that same man, ladies and gentlemen, asks this Court, asks you people as a jury to believe in him, give him justice when he was in an attitude of contempt towards the other court which attempted to give him an opportunity to do something for his country."

Surely such a statement was not pertinent to any issue in this case, even to the question of the credibility of the plaintiff. It was designed to becloud the real issues in the case and to focus the jury's attention on something which was immaterial and which was prejudicial to the plaintiff. We are of the opinion that no useful purpose was served by exposing to the jury the fact that this plaintiff had failed to enter the armed forces of the United States, and much harm to the plaintiff naturally followed such disclosure. This Court in Campion v. Brooks Transp. Co., Inc. (Stoneburner v. Brooks Transp. Co.), 77 U.S.App.D.C. 293, 135 F.2d 652, which was

an automobile collision case, ruled that it was not admissible on the issue of credibility to show that one of the litigants had been at a gambling house on perhaps a half dozen occasions and had gambled there on the night of the accident. If this were prejudicial error, how much more prejudice would be felt towards a person who had been practically ordered by a court to join the army and then had failed to do so?

■ Under our system of jurisprudence, " * * * It is the duty of the court and of its officers, the counsel of the parties, to prevent the jury from the consideration of extraneous issues, of irrelevant evidence, and of erroneous views of the law, to guard it against the influence of passion and prejudice, and to assure to the litigants a fair and impartial trial. An omission by court or counsel to discharge this duty, or a persistent violation of it, is a fatal error, because it makes the trial unfair." Union Pac. R. Co. v. Field, 8 Cir., 137 F. 14, 15. The Supreme Court of the United States in New York Central Railroad Company v. Edward H. Johnson, 279 U.S. 310, 318, 49 S.Ct. 300, 303, 73 L.Ed. 706, states:

"But a trial in court is never, as respondents in their brief argue this one was, 'purely a private controversy * * * of no importance to the public.' The state, whose interest it is the duty of court and counsel alike to uphold, is concerned that every litigation be fairly and impartially conducted and that verdicts of juries be rendered only on the issues made by the pleadings and the evidence. The public interest requires that the court of its own motion, as is its power and duty, protect suitors in their right to a verdict, uninfluenced by the appeals of counsel to passion or prejudice. See Union Pac. R. Co. v. Field, 8 Cir., 137 F. 14, 15; Brown v. Swineford, 44 Wis. 282, 293, 28 Am.Rep. 582. Where such paramount considerations are involved, the failure of counsel to particularize an exception will not preclude this Court from correcting the error. Brasfield v. United States, 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345."

[4, 5] This Court believes that the widest possible latitude should be allowed to the discretion exercised by the trial court because, under the circumstances in which an utterance is made and in the heat of a trial before a jury, the trial judge is more capable of understanding what may or may not prejudice either of the parties; but, having given full consideration to this latitude, we are of the opinion that the plaintiff below has not had a fair trial by reason of the kind and extent of the cross-examination and the admissions elicited thereby, as well as by the unfair allusion in defense counsel's argument to the fact that this plaintiff had not served in the armed forces of the United States.

The judgment must, therefore, be reversed and the case remanded to the court below with directions for a new trial.

Reversed.