**Tom SNOW and Kaye Snow, Plaintiffs,**

v.

**BOAT DIANNE LYNN, INC.,
Defendant.**

**Civ. No. 86–0305 P.**

United States District Court,
D. Maine.

July 17, 1987.

U. Charles Remmel, II, Portland, Me., for plaintiffs.

Leonard W. Langer, Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Currently before the Court is Plaintiffs' Motion for Partial Summary Judgment on the issue of Defendant's liability for the claim raised in Count II of Plaintiffs' Complaint. In this case, Plaintiff Tom Snow primarily seeks to recover damages for the injuries he allegedly suffered while a crew member aboard Defendant F/V DIANNE LYNN when on July 24, 1986 Plaintiff's leg became entangled in the belt of an alternator in the ship's engine room. Plaintiff has advanced two general theories of recovery, one based on the alleged negligence of Defendant and one based on the doctrine of seaworthiness (Count II). The Court finds that there is no genuine issue of material fact as to whether the ship was unseaworthy and whether this unseaworthiness caused Plaintiff's injury. Consequently, the Court grants Plaintiff's motion on these issues.

The material facts as established by the record before the Court are few and undisputed. The alternator in question protrudes into a walkway in the engine room. Five or six months prior to Plaintiff's accident, a marine surveying firm had recommended to the ship's owner, who is also its captain, that a protective guard be installed around this alternator and its moving belt or belts. The captain then instructed Plaintiff to install such a guard, but Plaintiff failed to do so. Plaintiff was injured when his pant leg was caught in some part of the alternator, forcing his leg into the hot machinery.

Plaintiff argues that these facts render Defendant liable on the issue of unseaworthiness as a matter of law. Defendant contends, however, that there exists a genuine issue of material facts as to whether Plaintiff was solely responsible for the unseaworthy condition of the ship.

The doctrine of seaworthiness is a doctrine of liability without fault. *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 94, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946). It

imposes upon a shipowner an absolute and nondelegable duty to supply a vessel which is reasonably safe for its intended use. *Id.* at 94–95 & n. 11, 66 S.Ct. at 877–878 & n. 11; 2 M. Norris, *The Law of Maritime Personal Injuries* §§ 300–303 (3d ed. 1975). Although a seaman's comparative negligence will reduce the amount of damages for which the shipowner is liable, it does not, as a general rule, defeat the seaman's right to recovery. *Seas Shipping*, 328 U.S. at 94 n. 11, 66 S.Ct. at 877 n. 11; 2 M. Norris § 313, at 45–46.

■ An exception to this general rule arises where the seaman's negligence is the sole cause of his injury, 2 M. Norris § 313, at 46, or, stated differently, where the unseaworthy condition is *"entirely* his own fault," *Valm v. Hercules Fish Prod., Inc.,* 701 F.2d 235, 236 (1st Cir.1983) (emphasis in original), or where the injury results from the "negligent use of an otherwise seaworthy vessel," *Peymann v. Perini Corp.,* 507 F.2d 1318, 1322 (1st Cir.1974), *cert. denied,* 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975). In these situations, the seaman's negligence bars any recovery. *Valm,* 701 F.2d at 236; *Peymann,* 507 F.2d at 1322.

■ Based on this exception, Defendant argues that there remains a genuine issue of fact as to whether Plaintiff was solely responsible for the unseaworthy condition of the ship. On its face, the language used by the courts to express the applicable rule appears to support Defendant's argument. The Court finds, however, that this language does not express with particularity the controlling factual distinction found in the line of cases that defines the exception, nor does it comport with the rule that the shipowner's duty is nondelegable. In the Court's view, the parameters of the exception may be best expressed as follows: a seaman is solely responsible for his injuries only if the seaman *creates* the hazard that causes the injury. If, however, the hazard is an existing *condition* of the

ship, the ship itself is unseaworthy, *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 498, 91 S.Ct. 514, 517, 27 L.Ed.2d 562 (1971); *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 569, 80 S.Ct. 926, 943, 4 L.Ed.2d 941 (1960) (Frankfurter, J., dissenting), and the exception does not apply. The seaman's responsibility to remedy a pre-existing hazard is relevant only to the issue of the seaman's comparative fault and thus to his damages. An analysis of the facts of the several cases cited to the Court reinforces the Court's position.

For instance, in *Peymann,* the plaintiff was overhauling the ship's engine while the ship was docked. In the course of making these repairs, plaintiff raised the cylinder heads from the engine. 507 F.2d at 1320. Oil dripped from these cylinder heads onto an iron pipe rail. *Id.* at 1321. The plaintiff was injured when he stood upon this rail without first removing the oil although it was his responsibility to do so. *Id.* The Court held that he could not recover. Similarly, in *Donovan v. Esso Shipping Company,* 259 F.2d 65 (3d Cir.1958), the plaintiff had loosened a topping lift, causing the boom to fall on him. *Id.* at 66. The Court found that the ship was seaworthy and that the plaintiff's injury was caused solely by his own mistake. *Id.* at 67. To the same effect is *Schlichter v. Port Arthur Towing Company,* 288 F.2d 801 (5th Cir.), *cert. denied,* 368 U.S. 828, 82 S.Ct. 50, 7 L.Ed.2d 32 (1961), where the plaintiff created the unseaworthy condition by locking the doors that would have given his rescuers access to the ship's life jackets. *Id.* at 805. *See also Williams v. The SS RICHARD DE LARRINAGA,* 287 F.2d 732 (4th Cir.1961) (negligent use of an otherwise seaworthy appliance).

Among the cases cited to the Court, only Judge Learned Hand's opinion in *Walker v. Lykes Brothers S.S. Company,* 193 F.2d 772 (2d Cir.1952), both rests on facts similar to the case at bar and supports Defendant's argument.[1] Nevertheless, the Court

---

**1.** In *Walker,* six of the eight catches on the drawers of two steel filing cabinets were broken, a condition which resulted in drawers rolling out upon the floor when the ship rolled.

The plaintiff, who was master of the ship, became aware of the defect shortly after the ship sailed. The court presumed that the same condition existed before the voyage. The plaintiff

finds *Walker* to be distinguishable on a more fundamental basis: *Walker* was an action brought under only the Jones Act, *id.* at 773; apparently plaintiff there had not raised a claim of unseaworthiness as a separate ground for relief. Judge Hand was properly concerned in *Walker* with the question of whether a master of a ship should be able to recover under the doctrine of comparative fault where the hazard-inducing condition existed solely due to his continued breach of his duty to repair it. His reasoning, however, appears to be particularly inappropriate in a case raising the issue of unseaworthiness where the owner's duty is nondelegable. One court, however, has suggested that the application of *Walker* to unseaworthiness claims represents an appropriate extension of the case's holding, but that court offered no explanation as to why this is so. *See Reinhart v. United States*, 457 F.2d 151, 153 n. 3 (9th Cir.1972) (calling the application of *Walker* to unseaworthiness claims "a natural corollary").

Other courts, however, have disregarded the scope of the issue raised in *Walker* and have applied the *Walker* rule to cases involving unseaworthiness claims. The rationale for this extension of *Walker* appears to rest on the more troublesome configuration of facts presented in these cases where the unseaworthy condition arose after the ship had begun her voyage and the person injured was responsible for maintaining the ship in a seaworthy condition during the voyage. These facts are obviously distinguishable from the facts presented here where the ship was unseaworthy before the voyage began.

For instance, one of the first cases to apply *Walker* was *Dixon v. United States*, 219 F.2d 10 (2d Cir.1955). In *Dixon*, the rungs of one of the ship's ladders were broken while cargo was being unloaded. The plaintiff, who was the chief officer of the ship, was responsible for checking the subsequently ordered repairs. During this inspection, he was injured because the ladder had not been repaired properly. *Id.* at 11–12. The court discussed at length the doctrine of seaworthiness but eventually decided that unresolved factual questions precluded its resolution of the issue of whether unseaworthy conditions arising *after* the ship has begun her voyage would impose strict liability on the ship's owner. *Id.* at 13. The court remanded the case for additional findings regarding the negligence of the repairmen, thus implying that an owner would be held liable for an unseaworthy condition arising during the course of a voyage if the owner negligently failed to repair it. *Id.* at 16.

A similar factual configuration was presented in *Reinhart*. There, the unloading of the ship's cargo resulted in a number of holes being gouged in some plywood sheathing floors in the ship's hold. 457 F.2d at 152. The plaintiff, chief mate of the ship, was responsible for maintaining the ship in a seaworthy condition during the voyage. He was injured when he fell through one of these holes during a routine inspection. Relying on *Walker*, the court held that the plaintiff's failure to fulfill his responsibility to the shipowner—by not being aware of the defects through proper inspection and by not repairing the defects—barred his recovery under a claim of unseaworthiness. *Id.* at 153.[2]

The Court realizes that the factual configurations of these two cases present diffi-

---

was injured when one of the drawers struck his shin. *Id.* at 773. The court held that because the plaintiff had an independent duty to the owner to repair the defect, the jury should have been instructed that if it found that plaintiff had breached this duty, the breach would bar plaintiff's recovery. *Id.* at 774.

**2.** Other courts that have criticized *Walker* have not squarely addressed the concerns raised by this Court because they have found *Walker* distinguishable on its facts. *See, e.g., Hudson Waterways Corp. v. Schneider*, 365 F.2d 1012, 1015–

16 & n. 1 (9th Cir.1966); *Nicroli v. Den Norske*, 332 F.2d 651, 654 (2d Cir.1964); *Dunbar v. Henry Du Bois' Sons Co.*, 275 F.2d 304, 306 (2d Cir.), *cert. denied*, 364 U.S. 815, 81 S.Ct. 45, 5 L.Ed.2d 416 (1960); *Mason v. Lynch Bros. Co.*, 228 F.2d 709, 711–12 (4th Cir.1956); *Boat DAGNY v. Todd*, 224 F.2d 208, 211–12 (1st Cir.1955). *Cf. Stanworth v. American Stern Trawlers, Inc.*, 523 F.2d 46 (9th Cir.1975) (applying *Walker* but finding that plaintiff was not barred from recovery where he undertook to remedy the unseaworthy condition).

cult issues of theory and policy regarding a shipowner's duty, and the Court expresses no view as to whether it would adopt the reasoning of these cases if presented with similar facts. Nevertheless, the Court believes that the rationale for extending *Walker* to situations where the unseaworthy condition arises during the course of a voyage does not support its extension to situations where the unseaworthy condition exists prior to the voyage. To do so would eliminate one of the foundations of the seaworthiness doctrine—that the owner's duty to supply a seaworthy ship is nondelegable.

In the present case, Defendant undertook the voyage while the ship was in an unseaworthy condition. Although Defendant may have relied upon Plaintiff to remedy the condition during the voyage, it required Plaintiff to do so while the ship was operational and thus exposed Plaintiff to the risk of injury. The Court finds that the existence of the unseaworthy condition and its causal relationship to Plaintiff's injuries are sufficient to impose liability upon Defendant under the doctrine of seaworthiness. The remaining issues of fact pertain to Plaintiff's comparative fault, which may significantly diminish Plaintiff's recovery. These issues are, however, properly reserved for the fact-finder at trial.

For the foregoing reasons, the Court hereby *GRANTS* Plaintiff's Motion for Partial Summary Judgment on Count II with regard to the issue of Defendant's liability for the ship's unseaworthiness.

So *ORDERED.*